Edgar T. Numrich, *pro se*
200 Greenridge Drive, #1108
Lake Oswego, OR 97035-1496
Telephone: (503) 635-2599
E-mail: numrich@msn.com

FILED 21 NOV '14 11:29 USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **EDGAR T. NUMRICH,** | Civil Case No. **3'14-CV-1864 BR** |
| Plaintiff, | **COMPLAINT** |
| | **Unlawful Trade Practices** [ORS 646.608; ORS 646.638] |
| | **Usury** [ORS 82.010(1)] |
| | **Breach of Contract** [Implied Covenant of Good Faith and Fair Dealing] |
| v. | **Mail & Wire Fraud** [18 U. S. C. § 1341, 1343] |
| | **General & Compensatory Damages; Punitive Damages** [ORS 646.638(1)] |
| **CENTURYLINK, Inc.,** a Corporation of Louisiana | **Injunctive Relief** [18 U. S. C. § 1345(b)]. |
| Defendant. | **CLAIM NOT SUBJECT TO MANDATORY ARBITRATION** |
| | **JURY TRIAL DEMANDED** |

Page 1 - COMPLAINT

Plaintiff alleges:

## Nature of the Case

1.

This is a civil action for monetary damages, restitution, and injunctive relief arising from unfair, unconscionable, willful, usurious, and unlawful trade practices incorporating representations, procedures, charges, and money demands (collectively, "actions") made or authorized by CenturyLink, Inc. ("Defendant", "CenturyLink") including by use of the mails and wires.

## Jurisdiction and Venue

2.

This Court has original jurisdiction over the matter under 28 U. S. C. § 1332 in that this is a civil action for damages in which the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and is between citizens and corporations of, or incorporated in, different States.

3.

This Court has personal jurisdiction over the matter in that at all relevant times, including but not limited to the time of the commission of the acts alleged herein, Defendant is a domestic corporation regularly transacting business and engaging substantial and not isolated activities within the State of Oregon. Fed.R.Civ.P. 4(h)(1).

4.

Without compromise of complete diversity, this Court is respectfully requested to exercise supplemental jurisdiction over state claims as related and forming part of the controversy that arise from the same set of operative facts. (28 U. S. C. § 1367(a))

5.

While engaged in the wrongful acts and practices described herein, Defendant directly or indirectly made use of the mails and electronic means and instruments of communication in interstate commerce (18 U. S. C. § 1341 and 1343).

6.

Defendant's activities are subject to being enjoined (18 U. S. C. § 1345(b)).

7.

Venue is based on 28 U.S.C. § 1391 and 18 U.S.C. § 1965(a). Oregon is the state in which a substantial part of the events and practices giving rise to the claim occurred.

**Plaintiff**

8.

At all relevant times, **Edgar T. Numrich** ("Plaintiff") was and is a resident-citizen of Lake Oswego, Oregon, and a subscriber ("customer") to CenturyLink, Inc. and its predecessor Qwest Communications International, Inc. ("Qwest") for residential land-line ("wire line") telephone and broadband internet services at a single physical address from May, 2002, to the present.

**Defendant**

9.

Incorporated and headquartered in Louisiana, **CenturyLink, Inc.** ("Defendant"; "CenturyLink") is a multinational communications company providing communication and data services to residential, business, governmental and wholesale customers. A member of the S&P 500 index, Defendant is the third-largest telecommunications company after AT&T and Verizon in terms of lines served in the United States. With an estimated 47,000 employees, CenturyLink operates as Local Exchange Carrier ("LEC")

together with providing long distance and internet service in 37 states. CenturyLink's 2013 revenues were reported to be $18.095 billion. Acquisition of Qwest Communications ("Qwest") was completed April 1, 2011. In Oregon, Qwest traced its origins to the former USWEST and Pacific NW Bell.

## BACKGROUND

**CenturyLink Contract of Service - Commercial Terms Pricing Policy;**

**High-Speed Internet Service Management; Subscriber Agreement;**

**Oregon Public Utilities Commission; Federal Communications Commission**

10.

As stated on its website (www.centurylink.com), CenturyLink offers mass market retail High-Speed Internet service to residential and business customers numbering in the "millions". Customers may purchase ("contract") Broadband/High-Speed Internet ("broadband"; "internet") with other services offered that include: **(a)** voice [telephone]; **(b)** wireless service from Verizon Wireless; and **(c)** television from CenturyLink or DIRECTV.

11.

At all relevant times, including where CenturyLink does certain business in Oregon as "Qwest", the CenturyLink internet website provides

> "Catalog and **Service Agreements are contracts between the relevant Qwest entity and the customer.** By ordering, using, paying for, and/or not canceling the services or features, the customer agrees to the provisions in those documents. Over time, **Qwest may change** the Catalogs or **Service Agreements and will give** you reasonable **notice** of important changes **instead of filing them with the Oregon Public Utility Commission . . . .**" (emphasis supplied)

However, as detailed herein, the Oregon Public Utility Commission ("OPUC") has *no* authority to - and does *not* - regulate internet broadband rates or other charges thereto.

Page 4 – COMPLAINT

12.

The **Service Agreements** are intended to define and encompass the internet service and charges thereto supplied by CenturyLink to its Oregon customers. Defendant's **late payment charges for internet services** ("ILPC"; "interest") are *not* subject to regulation by the OPUC. Instead, internet broadband services are the province of the Federal Communications Commission ("FCC") who classifies internet access as an "information service" and *not* "telecommunications".

13.

ILPC may be deemed "discretionary" as they are *not* a part of "express" terms as commonly defined in contract law. Where Defendant has unlimited discretion to set open-ended price terms to the disadvantage of its internet-subscriber customers, the discretion is circumscribed by both parties' reasonable expectations.

14.

In October, 2013, Defendant's telephone "Loyalty Team" and its "internet chat" staff failed to respond to Plaintiff's ILPC concerns, stating in part:

> "We are not given any information on a name or mailing address for anyone who you would contact. The only other thing I can tell you is that you can get on the 'centurylink.com' website and see if there is any other contact information." and "I cannot help you with this situation . . . I cannot from my department."

Plaintiff's further written attempts to resolve his disputes by contacting CenturyLink's senior management have been to no avail.

15.

Dated January 16, 2014 (and confirmed received January 21, 2014), Plaintiff addressed his written demand notice and claim for relief from ILPC to Defendant's Chief Operating Officer, Karen A. Puckett, but from whom no response was received.

Page 5 - COMPLAINT

16.

In an e-mail addressed to Plaintiff dated February 24, 2014, Defendant's Denver, Colorado, "Customer Advocacy" representative, Jerolyn Ochs, asserted in part "the late fee ... is compliant with all state and federal agencies which regulate *telecommunications* services" (*emphasis* supplied), but without detail or reference to definitive FCC authority.

17.

In further good-faith effort to resolve the issues and claims in this matter and dated October 3, 2014, Plaintiff volunteered a draft copy of this Complaint by certified return receipt United States mail to -- and requesting review by -- Defendant's Executive Vice President, General Counsel and Secretary, Mr. Stacey W. Goff   No reply was received from Mr. Goff.  By letter dated October 30, 2014, Defendant's "Lead Contract Representative", Patricia E. Fenner, quoted the statements of Jerolyn Ochs' reply while finding "no new issues" or "concerns" within Plaintiff's October 3, 2014 letter *or* draft Complaint, whether or not specific to the allegations and claims raised therein.

### Communications Act of 1934

18.

Contrary to Defendant's written representations to Plaintiff, the Federal Communications Commission ("FCC") classifies internet broadband as an "information service" -- *not* "telecommunication" -- pursuant, in part, to Title I of the Communications Act of 1934 (Chapter 5, Title 47 of the United States Code, 47 U.S.C. § 151 et seq.; "the Act").  Individual States (e. g., Oregon) are prohibited from enacting their own regulations thereto.  Regulation as to rates, terms, and conditions of late fees-interest charges for broadband services are not specifically evident in the Act.

## Unlawful Trade Practices

## Oregon Revised Statutes ("ORS") 646.605 to ORS 646.652

19.

Pursuant to **ORS 646.605**, " 'Person' includes natural persons and corporations, while 'trade' or 'commerce' includes 'offering or distributing . . . services . . . directly or indirectly affecting the people of [the State of Oregon].' "

20.

Pursuant to **ORS 646.608(1)(u):**

"A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person . . . [e]ngages in any other unfair or deceptive conduct in trade or commerce."

21.

Pursuant to **ORS 646.638(1)**

"Except as provided in subsections (8) and (9) of this section, a person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater. The court or the jury may award punitive damages and the court may provide any equitable relief the court considers necessary or proper."

**Oregon Contract Law - Implied Covenant of Good Faith and Fair Dealing**

22.

An implied covenant of good faith and fair dealing is incorporated in the *Uniform Commercial Code* (as part of Section 1-304) and codified by the American Law Institute as Section 205 of the *Restatement (Second) of Contracts*.

23.

Under Oregon law, every contract contains an implied duty of good faith and fair dealing.

24.

Where Defendant is afforded *discretion* to set the amount of ILPC, internet service customers of CenturyLink therefore may have lawful right of claim for breach of the implied duty of good faith and fair dealing.

25.

For Plaintiff -- and minimally all CenturyLink internet customers in Oregon, as well as in 36 other States subject to Century's billing practices -- the implied duty of good faith and fair dealing prohibits one party (here: CenturyLink) from utilizing the discretion it may have under the contract to provide internet services in opposition to both parties' reasonable expectations under the contract terms of service.

26.

When one party to a contract is given discretion in the performance of some aspect of the contract, the parties ordinarily contemplate that discretion will be exercised for particular purposes. If the discretion is exercised for purposes *not* contemplated by the parties, the party exercising discretion has performed in bad faith. Here, Plaintiff never contemplated a usurious interest charge for any purpose from Defendant.

Page 8 - COMPLAINT

27.

In addition, when a contract provides for discretion, but does not provide for a method of exercising that discretion, the duty of good faith and fair dealing also applies.

28.

In its internet customer billing, Century has discretion to insert an open price term for ILPC, while describing no *method* of setting the fee being spelled out in customer contracts of service.

29.

Setting a usurious fee (interest) for late payment of broadband internet service is an abuse of discretion, a breach of duty in good faith and fair dealing, and contrary to statutory law in Oregon, as well as numerous other federal judicial districts.

## ALLEGATIONS

### Unlawful Trade Practices - Usury

30.

A.  Interest is recognized as compensation allowed by law in forbearance of money, and usurious when in excess of lawful rates, even when labeled a "charge".

B.  Pursuant to Oregon statute [ORS 82.010(1)], the allowed rate of interest where the parties have *not* otherwise agreed is **9% per annum** and is payable on "money due or to become due where there is a contract to pay interest and no rate specified."

C.  Beginning July 14, 2013 to the present, Plaintiff has been charged (and paid for the most part) a compounded $6.00 of ILPC each month to the present -- a total of $102.00 -- on internet billings of $19.95 on that date and $15.99 on October 14, 2013; that is, a total of $35.94. The $6.00 compounded charges are interest under federal law and usurious under Oregon law (as well as in most states of Defendant's service area).

Page 9 - COMPLAINT

D.   Specifically, a *single* **one-month** ILPC charged by Defendant at $6.00 calculates at a *monthly* interest rate in excess of **16.6%** ($6.00 divided by $35.94) or an annualized rate of **200%**. ($6.00 x 12 months = $72.00 divided by $35.94 = 200.33%)

E.   When there is *any* unpaid internet balance upon which one-or-more late-payment charges *already have been levied*, Defendant *repeats* the $6.00 month-to-month ILPC *even when the total new charges for each subsequent month are paid in full* ; i. e., including telephone-voice, internet, *and consecutive* ILPC.  ILPC is continuously compounded, month-after-month.

F.   This practice is confirmed within Defendant's published monthly billing statements as "***Any** amount of internet and internet related charges left unpaid 30 days after bill date is subject to a $6.00 late payment charge*" (emphasis supplied).

G.   In Defendant's scheme, where *one month* of Plaintiff's internet charges of $15.99 remains unpaid for a full year – while **all** other monthly invoices are paid in full (*including the compounded ILPC*) -- the *annualized* interest charge increases to **450.28%** on the single-month's original service billing ($6.00 x 12 months = $72 of ILPC divided by a single-month unpaid internet charge of $15.99 = 450.28%).

H.   By Defendant's published standard, a *fractional* amount owed carried over for a year finds a $6.00 monthly late charge on just $1.00 for 12 months = **7,200%** in equivalent annual interest.  There are no exceptions.

I.   For comparison, *published* monthly interest charges on $15.99 in unpaid CenturyLink landline **telephone** service -- *regulated* by OPUC -- is **50 cents**, or **3.13%**.

J.   Paying the monthly bill in full prior to the due date does not excuse Defendant's usual and customary business practice of proven usurious penalties.

K.   Defendant is thereby engaged in unlawful trade and commercial practices.

Page 10 - COMPLAINT

L. Plaintiff has been injured and damaged by Defendant's unlawful trade and commercial practices that include usurious charges.

### Breach of Contract – Implied Covenant of Good Faith and Fair Dealing

31.

A. Between May, 2002, and April, 2011, Defendant and its predecessor company Qwest entered into a contract with Plaintiff to provide him with regulated telephone telecommunications services, and broadband internet information services *without* late-payment fees absent state-government regulation of any such interest.

B. In Oregon, every contract contains an implied obligation and duty that the parties will perform the contract in good faith and prohibits engaging any act avoiding fair dealing that would undermine the justified expectations of Plaintiff.

C. Failure to engage good faith and fair dealing is a breach of contract.

D. A breach of contract occurs when Defendant claims, refuses, or engages performance contrary to the language of the contract.

E. Defendant had an obligation to perform, and failed to perform, the contract in a way that effectuates the reasonable contractual expectations of the Plaintiff.

F. Bad faith may be overt or may consist, and did so, in abuse of discretion by a party to the contract.

G. This is so where Defendant unilaterally engaged discretionary and compounded monthly late payment charges for internet services ("ILPC") of $5.00 beginning April, 2011 (subsequently increased to $6.00) *in a manner neither otherwise provided for nor expected* by Plaintiff at inception of the contract.

H. ILPC constitutes "interest" exceeding the limits in ORS 82.010(1).

I. Plaintiff was injured and damaged by Defendant's breach of the contract.

Page 11 - COMPLAINT

**Mail and Wire Fraud**

32.

At all relevant times, Defendant, in issuing monthly invoices for internet services that included wrongful ILPC, routinely made use of the United States Mails to obtain money by means of false pretense of invoices being lawful. Such acts constitute mail fraud pursuant to 18 U. S. C. § 1341. Plaintiff was injured and damaged thereby.

33.

At all relevant times, Defendant, in issuing monthly invoices for internet services that included wrongful ILPC, routinely made use of the internet by wire line to obtain money by means of false pretense of being lawful. Such acts constitute wire fraud pursuant to 18 U. S. C. § 1343. Plaintiff was injured and damaged thereby.

**Damages**

34.

Consequent to the actions of Defendant, Plaintiff has suffered both economic and non-economic damages. Plaintiff's economic damages may be established with reasonable probability and are capable of confirmation by reference to empirical facts. These include, but are not limited to, Defendant's breach of the implied covenant of good faith and fair dealing in the contract between the parties; unlawful trade and commercial practices constituting usury under Oregon law; mail and wire fraud incidental thereto in Defendant's billing practices; and the time and expense in good-faith effort to rectify Defendant's wrongdoing prior to preparation and execution of this lawsuit.

35.

Plaintiff specifically pleads money damages in the amount of $85,000.00 against Defendant for

(1) Unlawful Trade Practices – Usury

(2) Breach of contract - Implied covenant of good faith and fair dealing;

(3) Mail and Wire Fraud

where each and all are by means of repetitive abuse of discretion in the continuous levy of interest that exceeds statutory limits in the form of arbitrary internet late-payment charges noticed to Plaintiff both by United States mail and wire line broadband service.

36.

Given there is ~ and otherwise cannot be ~ any assurance Defendant will not continue its wrongful and damaging conduct against Plaintiff and others so situate, Plaintiff pleads for injunctive relief from this Court to bar such conduct pursuant to the provisions and requirements of 18 U. S. C. § 1345(b).

37.

Plaintiff's non-economic damages include pain and mental suffering, emotional distress, and inconvenience on no fewer than seventeen (17) separate occasions over two years; and that constitute actual and foreseeable present harm or injury even if not physical in nature. In total, Plaintiff alleges and claims economic damages of $10,000.00 and non-economic damages of $75,000.00 against Defendant CenturyLink, Inc.

**CLAIM FOR RELIEF**

38.

Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1-37 herein.

39.

As a direct consequence of Defendants' breach of contract, unlawful trade practices of usury, and fraudulent acts, Plaintiff suffered grievous consequences, injury, and damage to his personal welfare and economic well-being over multiple years. Defendant denied substantiating its actions alleged herein as legitimate.

40.

At all relevant times, Defendant's **"High-Speed Internet Subscriber Agreement"** between itself and Plaintiff provides "either party may pursue claims . . . in court if they relate solely to the collection of any debts . . . owe[d] to CenturyLink." That is, mandatory arbitration of this dispute and controversy is *excluded*.

41.

A real and actual controversy exists between the parties.

42.

Plaintiff suffered irreparable harm, mental distress, pain, and suffering as a result of the actions and conduct of Defendant complained of herein.

43.

Plaintiff is entitled to relief and monetary damages for his injuries.

44.

Plaintiff has no adequate remedy at law other than this action. The controversy is judiciable in this Court.

Page 14 - COMPLAINT

WHEREFORE, Plaintiff prays for judgment, together with declaratory and equitable relief as may be appropriate, in favor of him, together with award of general, compensatory, and punitive damages:

(1) economic damages in the amount of $10,000.00 as against Defendant CenturyLink, Inc.;

(2) non-economic damages in the amount of $75,000.00 as against Defendant CenturyLink, Inc.;

(3) punitive damages as may be decided and awarded by the court or jury;

(4) the costs of this action and Plaintiff's reasonable attorneys' fees, if any, together with interest until paid;

(5) and that this Court retain jurisdiction of this action and Plaintiff have such other and further relief as is just.

Plaintiff demands a trial by jury.

DATED: November 21, 2014

Respectfully submitted,

_____
EDGAR T. NUMRICH
Plaintiff, *pro se*

Page 15 - COMPLAINT