IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EDGAR T. NUMRICH,                          3:14-CV-01864-BR

        Plaintiff,                       OPINION AND ORDER

v.

QWEST CORPORATION, a Colorado
Corporation of itself and on
behalf of CENTURYLINK, INC.,
a Corporation of Louisiana,

        Defendants.

EDGAR T. NUMRICH
200 Greenridge Drive
#1108
Lake Oswego, OR 97035-1496
(503) 635-2599

        Plaintiff, *Pro Se*

CAREY CALDWELL
RICHARD J. KUHN
Hart Wagner, LLP
1000 S.W. Broadway
Suite 2000
Portland, OR 97205
(503) 222-4499

        Attorneys for Defendants

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on the Motion (#13) for Dismissal and Summary Judgment of Defendants Qwest Corporation and CenturyLink, Inc.; Plaintiff Edgar T. Numrich's First Request (#27) for Judicial Notice; Plaintiff's Second Request (#29) for Judicial Notice; Plaintiff's Third Request (#31) for Judicial Notice; and Defendants' Motion (#33) to Strike Plaintiff's Surreplies.

For the reasons that follow, the Court **GRANTS** Defendants' Motion for Dismissal on the ground of lack of personal jurisdiction as to CenturyLink, **GRANTS** Defendants' Motion for Dismissal on the ground of lack of subject-matter jurisdiction as to Qwest, **GRANTS** Defendants' Motion to Strike Plaintiff's Surreplies, and **STRIKES** Plaintiff's Requests for Judicial Notice.


## BACKGROUND

The following facts are taken from the Complaint and the parties' materials filed in relation to Defendants' Motion for Dismissal.

At all relevant times Plaintiff was a resident of Oregon and a subscriber to a residential land-line telephone and broadband internet service.  Plaintiff received land-line telephone and broadband internet services pursuant to the Qwest High-Speed Internet Subscriber Agreement that contained the following

2 - OPINION AND ORDER

arbitration clause:

>(a) <u>Arbitration Terms</u>.  You agree that any dispute or claim arising out of or relating to the Services, Equipment, Software, or this Agreement (whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory) will be resolved by binding arbitration.  The sole exceptions to arbitration are that either party may pursue claims:  (1) in small claims court that are within the scope of its jurisdiction, provided the matter remains in such court and advances only individual (non-class, non-representative, nonconsolidated) claims; and (2) in court if they relate solely to the collection of any debts you owe to Qwest.

>* * *

>(b) <u>Waiver of Jury and Class Action</u>.  By this Agreement, both you and Qwest are waiving rights to litigate claims or disputes in court. . . . Both you and Qwest also waive the right to a jury trial on your respective claims, and waive any right to pursue any claims on a class or consolidated basis or in a representative capacity.

Decl. of Carey Caldwell, Ex. C at ¶ 17.  The Agreement further provided the arbitration "shall be conducted by the American Arbitration Association ("AAA")" and "[t]he Federal Arbitration Act, 9 U.S.C. Sections 1-16 . . . shall govern the arbitration of the dispute."  *Id*.

CenturyLink is a Louisiana corporation with its principal place of business in Monroe, Louisiana.  CenturyLink is a holding company that has an ownership interest in more than 200 companies

including Qwest Corporation.[1]

CenturyLink is a registered corporation in Oregon, but it does not maintain any offices, employees, bank accounts, financial accounts, real estate, or personal property in Oregon.

On November 21, 2014, Plaintiff filed a Complaint in this Court against CenturyLink alleging claims for violation of Oregon's Unlawful Trade Practices Act, Oregon Revised Statute § 646.605, *et seq.*; breach of the implied covenant of good faith and fair dealing; usury; and mail and wire fraud.

On December 24, 2014, Plaintiff filed an Amended Complaint against "Qwest Corporation . . . of itself and on behalf of CenturyLink" alleging claims for violation of Oregon's Unlawful Trade Practices Act, usury, and mail and wire fraud.

On January 7, 2015, Defendants filed a Motion for Dismissal and Summary Judgment in which they move to dismiss Plaintiff's claims against CenturyLink on the ground of lack of personal jurisdiction, move to dismiss Plaintiff's claims against Qwest on the ground of lack of subject-matter jurisdiction, and/or move for summary judgment on the merits of Plaintiff's claims. On January 29, 2015, Plaintiff filed a Response. On February 11, 2015, Defendants filed a Reply.

On January 9, 2015, the Court issued a Summary Judgment

---

[1] Qwest Corporation is, in fact, a subsidiary of CenturyLink.

4 - OPINION AND ORDER

Advice Notice to Plaintiff advising him that if he did not submit admissible evidence in opposition to Defendants' Motion for Summary Judgment, summary judgment could be entered against him.

Between February 17 and 23, 2015, Plaintiff filed three Requests for Judicial Notice.  On February 24, 2015, Defendants filed a Motion to Strike Plaintiff's Surreplies (*i.e.*, Plaintiff's Requests for Judicial Notice).  On March 4, 2015, Plaintiff filed a Response to Defendants' Motion to Strike.  The Court took the matters under advisement on March 4, 2015.

## PLAINTIFF'S REQUESTS FOR JUDICIAL NOTICE (#27, #29, #31) and DEFENDANTS' MOTION (#33) TO STRIKE SURREPLIES

As noted, Plaintiff filed three Requests for Judicial Notice after Defendants filed their Reply.  Defendants move to strike Plaintiff's three Requests for Judicial Notice, which Defendants characterize as Surreplies to their Motion for Dismissal.

## I.  Standards

Federal Rule of Evidence 201 allows a court to take judicial notice of facts that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  The court may take judicial notice of documents that are matters of public record.  *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)(court may take "judicial notice of matters of public record outside the

pleadings" when determining whether a complaint fails to state a claim).

Federal Rule of Civil Procedure 12(f) provides the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

## II.  **Analysis**

Defendants contend Plaintiff offers in his Requests for Judicial Notice further legal argument rather than facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, and, therefore, Plaintiff's Requests are, in fact, Surreplies.  The Court agrees.

Local Rule 7-1(f)(3) provides:  "Unless directed by the Court, no further briefing is allowed other than the briefing allowed under LR 56-1(b)."  Local Rule 56-1(b), in turn, provides only "[i]f an evidentiary objection is raised by the moving party in its reply memorandum [may] the non-moving party . . . file a Surreply memorandum . . . addressing only an evidentiary objection."

Defendants do not raise any evidentiary objections in their Reply, and Plaintiff does not address any alleged evidentiary objections by Defendants in his Requests for Judicial Notice. Plaintiff instead merely reiterates the legal arguments found in his Response to Defendants' Motion for Dismissal.  Moreover, "surreplies are disfavored and the party seeking to submit one

6 - OPINION AND ORDER

has to demonstrate a compelling reason for permitting the additional filing and such requests are routinely disallowed when that burden is not met." *Raybould v. JPMorgan Chase Bank, N.A.*, No. 6:13-CV-1966-TC, 2014 WL 7146962, at *1 n.2 (D. Or. Dec. 11, 2014)(citation omitted). *See also Queensridge Towers LLC v. Allianz Global Risks US Ins. Co.*, No. 2:13-CR-197 JCM (PAL), 2015 WL 1403479, at *2 (D. Nev. Mar. 26, 2015)("Surreplies are disfavored and only authorized to address new matters raised in a reply."); *Huskey v. Ahlin*, No. 1:12-cv-00569-AWI-SKO (PC), 2014 WL 348449, at *1 (E.D. Cal. Jan 31, 2014)("[S]urreplies are not permitted as a matter of course and are disfavored.").

Accordingly, the Court grants Defendants' Motion to Strike and strikes Plaintiff's Requests for Judicial Notice.

## <u>DEFENDANTS' MOTION (#13) FOR DISMISSAL FOR LACK OF</u> <u>PERSONAL JURISDICTION AS TO CENTURYLINK</u>

Defendants move to dismiss CenturyLink from this action pursuant to Federal Rule of Civil Procedure 12(b)(2) on the ground that this Court lacks personal jurisdiction over CenturyLink.  Alternatively, CenturyLink moves for summary judgment on the merits of Plaintiff's claims.

CenturyLink asserts this Court lacks general jurisdiction over CenturyLink, and Plaintiff appears to concede that point. Plaintiff, however, contends this Court has specific personal

jurisdiction over CenturyLink.

## I.   Standards

When "the existence of personal jurisdiction is challenged and the defendant appears specially to contest its presence in the jurisdiction, the plaintiff has the burden to come forward with some evidence to establish jurisdiction." *Dist. Council No. 16 of Intern. Union of Painters & Allied Trades, Glaziers, Architectural Metal & Glass Workers, Local 1621 v. B&B Glass, Inc.*, 510 F.3d 851, 855 (9th Cir. 2007)(citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).  "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the juris-dictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)(citing *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).  If the court makes a jurisdictional decision based only on the pleadings and affidavits submitted by the parties and does not conduct an evidentiary hearing, the plaintiff need make only a *prima facie* showing of personal jurisdiction.  *B&B Glass*, 510 F.3d at 855 (citation omitted).  When determining whether the plaintiff has met the *prima facie* showing, the court must assume the truth of uncontroverted allegations in the complaint.  *Ochoa v. J.B. Martin and Sons Farms, Inc.,* 287 F.3d 1182, 1187 (9th Cir. 2002).

## II. Specific Personal Jurisdiction

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis.  First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute.  Second, the exercise of jurisdiction must comport with federal due process." *Bauman v. Daimler Chrysler Corp.*, 579 F.3d 1088, 1094 (9th Cir. 2009)(quotations omitted).  "Oregon's long-arm statute confers jurisdiction to the outer limits of due process under the United States Constitution." *Pac. Reliant Indus., Inc. v. Amerika Samoa Bank*, 901 F.2d 735, 737 (9th Cir. 1990)(citation omitted).  *See also J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2800 n.8 (2011)("State long-arm provisions allow the exercise of jurisdiction subject only to a due process limitation in . . . Oregon); Or. R. Civ. P. 4L.  Oregon's long-arm statute, therefore, is co-extensive with the limits of due process. *Gleason v. Carter*, No. 3:12-CV-01265-HA, 2012 WL 4482372, at *4 n.1 (D. Or. Sept. 25, 2012).

"The due process analysis, in turn, centers on whether [a nonresident defendant] has 'certain minimum contacts' with [the forum state], such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Fiore v. Walden*, 688 F.3d 558, 573 (9th Cir. 2012) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

The Ninth Circuit applies the following three-part test to

9 - OPINION AND ORDER

determine whether a district court constitutionally may exercise specific jurisdiction over a nonresident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006)(quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). "If the plaintiff fails to satisfy either of [the first two] prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

## III. Analysis

Plaintiff alleges in his Complaint that the Court has personal jurisdiction over CenturyLink because it is "a domestic corporation regularly transacting business and engaging in

substantial activities within the state of Oregon." Plaintiff concedes his service agreements are with a Qwest entity, but he asserts Qwest provides services in Oregon on behalf of CenturyLink.

As noted, CenturyLink is a Louisiana corporation and the record reflects its principal place of business is in Monroe, Louisiana. Decl. of Joan Randazzo at ¶ 3. CenturyLink is a holding company that has an ownership interest in more than 200 companies. *Id*. As a holding company, CenturyLink acquires and invests in companies in the communications and technology industries with the goal of earning returns for its shareholders. *Id*. at ¶ 5. Although CenturyLink is registered in Oregon, it does not maintain an office in Oregon; it does not have any employees, bank accounts, or other financial accounts in Oregon; it does not own any real or personal property in Oregon; it does not make, use, sell, or offer to sell any products or services in Oregon; it has never advertised or posted job openings for jobs located in Oregon; it does not have any contracts with any entity that specifically require performance in Oregon; and it does not hold a license in Oregon authorizing it to provide any kind of internet service nor has it applied for such a license in Oregon or any other state. Randazzo Decl. at ¶¶ 9-11.

In addition, although the record reflects Qwest is a subsidiary of CenturyLink, CenturyLink does not exercise any

control or discretion over the day-to-day operations of Qwest. Randazzo Decl. at ¶ 13.  CenturyLink also does not have any involvement in billing customers for any services or products provided by Qwest Corporation (or any of its other 200 subsidiaries), in the collection of payments from customers for those services or products, or in the processing of customer payments for those products or services.  *Id*. at ¶ 15.

Plaintiff asserts CenturyLink's Form 10-K filed with the Securities and Exchange Commission (SEC) shows CenturyLink is in fact a "real party in interest" in this matter.  As CenturyLink notes, however, the fact that it complied with SEC requirements for filing a consolidated annual 10-K is not sufficient to subject it to the jurisdiction of this Court.  Moreover, the fact that Qwest is a subsidiary of CenturyLink is also insufficient to subject CenturyLink to this Court's jurisdiction.  *See, e.g., Crystal Cruises, Inc. v. Moteurs Leroy-Somer S.A.*, 545 F. App'x 647, 647-48 (9th Cir. 2013)("Corporations are treated as separate and distinct entities and 'the presence of one . . . in a forum state may not be attributed to the other' for determining juris-diction." (quoting *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007)).

In any event, Plaintiff fails to identify any evidence that suggests CenturyLink is, in fact, the alter ego of Qwest or that indicates the Court should pierce the corporate veil of either

12 - OPINION AND ORDER

CenturyLink or Qwest to establish personal jurisdiction.  In

fact, the record reflects the relationship between CenturyLink

and Qwest is like that described in *Doe v. Unocal Corporation*,

248 F.3d 915 (9th Cir. 2001).  In *Doe* the Ninth Circuit noted:

> [When] a holding company is nothing more than an
> investment mechanism[; *i.e.*,] a device for
> diversifying risk through corporate acquisitions
> the subsidiaries conduct business not as its
> agents but as its investments.  The business of
> the parent is the business of investment, and that
> business is carried out entirely at the parent
> level.

*Id*. at 929 (quotation omitted).  CenturyLink stated in pertinent

part in its December 2013 Form 10-K:

> As a holding company, substantially all of our
> income and operating cash flow is dependent upon
> the earnings of our subsidiaries and their
> distribution of those earnings to us in the form
> of dividends, loans or other payments.  As a
> result, we rely upon our subsidiaries to generate
> the funds necessary to meet our obligations,
> including the payment of amounts owed under our
> long-term debt.  Our subsidiaries are separate and
> distinct legal entities and have no obligation to
> pay any amounts owed by us or, subject to limited
> exceptions for tax-sharing or cash management
> purposes, to make any funds available to us to
> repay our obligations, whether by dividends, loans
> or other payments.  State law applicable to each
> of our subsidiaries restricts the amount of
> dividends that they may pay.

Decl. of Carey Caldwell, Ex. H at 1.  Plaintiff does not offer

any evidence that CenturyLink is anything other than a holding

company.  In short, Plaintiff fails to establish that CenturyLink

has purposefully directed its activities or consummated

transactions with Oregon or Plaintiff or that it has performed

13 - OPINION AND ORDER

some act by which it has purposefully availed itself of the privilege of conducting activities in Oregon.

Because Plaintiff "fails to satisfy [one] of [the first two] prongs, personal jurisdiction is not established in the forum state."  The Court, therefore, concludes Plaintiff has not established this Court has personal jurisdiction over CenturyLink.

Accordingly, the Court grants CenturyLink's Motion for Dismissal on the ground of lack of personal jurisdiction. Because the Court concludes it lacks personal jurisdiction over CenturyLink, the Court does not address CenturyLink's other ground for dismissal.

**DEFENDANTS' MOTION (#13) FOR DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION AS TO QWEST**

Defendants move for dismissal of Plaintiff's claims against Qwest on the ground that this Court lacks subject-matter jurisdiction over Plaintiff's claims against Qwest pursuant to the arbitration clause in the Agreement.  Alternatively, Qwest moves for summary judgment on the merits of Plaintiff's claims.

**I.    Standard**

Plaintiff has the burden to establish that the court has subject-matter jurisdiction.  *Robinson v. Geithner*, 359 F. App'x 726, 728 (9th Cir. 2009).  *See also Ass'n of Am. Med. Coll. v. United States*, 217 F.3d 770 (9th Cir. 2000).

14 - OPINION AND ORDER

When deciding a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court may consider affidavits and other evidence supporting or attacking the complaint's jurisdictional allegations. *Rivas v. Napolitano*, 714 F.3d 1108, 1114 n.1 (9th Cir. 2013). The court may permit discovery to determine whether it has jurisdiction. *Laub v. United States Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). When a defendant's motion to dismiss for lack of jurisdiction "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)(citation omitted).

## II. Arbitration Standards

Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.,* "in response to widespread judicial hostility to arbitration." *Am. Exp. Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013). The FAA provides arbitration agreements generally "shall be valid, irrevocable, and enforceable." *Knutson v. Sirius XM Radio, Inc.,* 771 F.3d 559, 564 (9th Cir. 2014). *See also* 9 U.S.C. § 2.

> [C]ourts must rigorously enforce arbitration
> agreements according to their terms, including
> terms that specify with whom [the parties] choose
> to arbitrate their disputes and the rules under
> which that arbitration will be conducted. That
> holds true for claims that allege a violation of a

federal statute, unless the FAA's mandate has been overridden by a contrary congressional command.

*Am. Exp. Co.*, 133 S. Ct. at 2309 (quotations omitted).

"Under the FAA, the basic role for courts is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Knutson*, 771 F.3d at 564-65 (quotation omitted). "[A] district court may either stay the action or dismiss it outright when . . . the court determines . . . the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). *See also* 9 U.S.C. §§ 3, 4.

## III. Analysis

It is undisputed that Plaintiff received service from Qwest at all relevant times pursuant to Qwest's Subscriber Agreement that contains the following arbitration clause:

> (a) Arbitration Terms.  You agree that any dispute or claim arising out of or relating to the Services, Equipment, Software, or this Agreement (whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory) will be resolved by binding arbitration.  The sole exceptions to arbitration are that either party may pursue claims:  (1) in small claims court that are within the scope of its jurisdiction, provided the matter remains in such court and advances only individual (non-class, non-representative, nonconsolidated) claims; and (2) in court if they relate solely to the collection of any debts you owe to Qwest.

* * *

(b) <u>Waiver of Jury and Class Action</u>.  By this
Agreement, both you and Qwest are waiving rights
to litigate claims or disputes in court. . . .
Both you and Qwest also waive the right to a jury
trial on your respective claims, and waive any
right to pursue any claims on a class or
consolidated basis or in a representative
capacity.

Caldwell Decl., Ex. C at ¶ 17.  The Agreement further provides

the arbitration "shall be conducted by the American Arbitration

Association ("AAA")," and "[t]he Federal Arbitration Act, 9

U.S.C. Sections 1-16 . . . shall govern the arbitration of the

dispute." *Id*.

Qwest contends Plaintiff's claims against it are subject to

the arbitration clause, and, therefore, this Court lacks subject-

matter jurisdiction over those claims.  In his Amended Complaint,

however, Plaintiff alleges the arbitration clause does not govern

his claims against Qwest because his claims "relate solely to the

collection of any debts [that Plaintiff] owe[s] to Qwest."

Although it is not entirely clear, it appears Plaintiff also

asserts in his Response to Defendants' Motion that the

arbitration clause is unconscionable.

**A.    Applicability of the Arbitration Clause**

As noted, Plaintiff asserts in his Amended Complaint

that the arbitration clause does not govern his claims because

his claims "relate solely to the collection of any debts [that

Plaintiff] owe[s] to Qwest."  Defendants, however, assert

Plaintiff's claims do not relate *solely* to the collection of any

17 - OPINION AND ORDER

debt he may owe Defendants.  As Defendants point out, Plaintiff does not allege in his Amended Complaint that he owes money on his account.  Plaintiff instead asserts Defendants charged usurious interest rates on their accounts, Defendants used the mail and the internet to issue invoices for services that were charged at usurious rates, and Defendants' activities as described in the Amended Complaint violate Oregon UTPA, Oregon's usury laws, and the Racketeer Influence Corrupt Organization Act (RICO), 18 U.S.C. §§ 1341, 1343.  Plaintiff alleges he is entitled to statutory economic damages under the Oregon UTPA, Oregon's usury laws, and RICO.

The Supreme Court has made clear that courts "must rigorously enforce arbitration agreements according to their terms."  Here the parties agreed to arbitrate "any dispute or claim arising out of or relating to . . . this Agreement (whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory)."  The parties agreed to a narrow exception to that broad agreement for claims that "relate solely to the collection of any debts you owe to Qwest."  The Court may not read out the word "solely" in the arbitration clause.  Thus, the Court concludes the word "solely" in the context of the entire arbitration provision limits the arbitration exception to actions involving only debt collection.  Here Plaintiff's claims do not relate solely to the collection of a debt, but also include

statutory claims beyond the collection of a debt.

On this record the Court concludes Plaintiff's claims against Qwest do not fall under the exception to the arbitration clause for actions related solely to the collection of any debt owed by Plaintiff to Qwest.

**B.    Unconscionability**

Although it is not entirely clear, it appears Plaintiff is asserting in his Response to Defendants' Motion that the arbitration clause is unconscionable because the late-charge provisions in the Agreement are usurious, and, therefore, unconscionable.[2]

When grounds "exist at law or in equity for the revocation of any contract," courts may decline to enforce arbitration agreements.  9 U.S.C. § 2.  *Knutson*, 771 F.3d at 564. The Supreme Court recently "reaffirmed that the savings clause preserves generally applicable contract defenses such as unconscionability, so long as the doctrines are not 'applied in a fashion that disfavors arbitration.'"  *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012)(quoting *AT&T Mobility LLC v. Conception*, 131 S. Ct. 1740, 1747 (2011)).

Pursuant to Oregon law, a "party asserting unconscionability bears the burden of demonstrating that the

---

[2] Plaintiff, however, specifically asserts in his Response that he "is not contesting the whole cloth of Defendants' Subscription Agreement."  Resp. at 24.

arbitration clause in question is, in fact, unconscionable."
*Livingston v. Metropolitan Pediatrics, LLC,* 234 Or. App. 137, 151
(2010)(citing *W.L. May Co., Inc. v. Philco-Ford Corp.*, 273 Or.
701, 707 (1975)).  Whether a contract is unconscionable is a
"question of law to be decided based on the facts in existence at
the time the contract was made." *Livingston*, 234 Or. App. at
151.

"In Oregon, the test for unconscionability has both
procedural and substantive components." *Id*. (citing *Vasquez-
Lopez v. Beneficial Or., Inc.*, 210 Or. App. 553, 556 (2007)).

> Procedural unconscionability refers to the
> conditions of contract formation and involves a
> focus on two factors:  oppression and surprise.
> Oppression exists when there is inequality in
> bargaining power between the parties, resulting in
> no real opportunity to negotiate the terms of the
> contract and the absence of meaningful choice.
> Surprise involves the question whether the
> allegedly unconscionable terms were hidden from
> the party seeking to avoid them.

*Livingston*, 234 Or. App. at 151.  Substantive unconscionability,
in turn, "generally refers to the terms of the contract, rather
than the circumstances of formation, and the inquiry focuses on
whether the substantive terms unfairly favor the party with
greater bargaining power." *Id*.

As noted, the basis for Plaintiff's possible assertion
of unconscionability is not entirely clear.  To the extent that
Plaintiff asserts the arbitration clause is unconscionable
because the late-charge provisions in the Agreement are allegedly

20 - OPINION AND ORDER

usurious, the Court finds Plaintiff's argument unconvincing. Even if late-charge provisions in the Agreement are usurious (which this Court does not decide) and usurious provisions are unconscionable, unconscionability of one clause of a contract does not render other clauses of the contract unconscionable, particularly when, as here, the plaintiff "is not contesting the whole cloth of Defendants' Subscription Agreement."

To the extent that Plaintiff asserts the arbitration clause is unconscionable because Plaintiff and Qwest have unequal bargaining power, Oregon courts have made clear that unequal bargaining power without some evidence of deception, compulsion, or unfair surprise is not sufficient to establish unconscionability. *See, e.g., Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610, 615 (2007). In addition, Qwest points out that Plaintiff has at least one other internet provider available in his area, and, therefore, Plaintiff had the choice to select an internet provider other than Qwest or to forego internet service altogether. The record, however, reflects Plaintiff contacted Qwest and solicited discounted service for his account at least four times: August 2011, 2012, 2103, and 2014. On each occasion Plaintiff was offered and accepted a 12-month contract subject to the High-Speed Internet Subscriber Agreement that contained the arbitration clause at issue. Plaintiff concedes he was aware of the Agreement and that he was subject to the terms of the

Agreement at all relevant times.  In addition, the arbitration clause in the Agreement is titled in bold and states:  "PLEASE READ THIS SECTION CAREFULLY.  IT AFFECTS RIGHTS THAT YOU MAY OTHERWISE HAVE.  IT PROVIDES FOR DISPUTES THROUGH MANDATORY ARBITRATION . . . INSTEAD OF IN A COURT BY A JUDGE OR JURY." Caldwell Decl., Ex. C at 16.  Plaintiff has not alleged compulsion, unfair surprise, or deception with respect to the arbitration clause.

On this record Plaintiff has not established the arbitration clause in the Agreement is unconscionable.  The Court, therefore, concludes the arbitration clause in the Agreement is valid.

Accordingly, the Court grants Qwest's Motion for Dismissal on the ground of lack of subject-matter jurisdiction. Because the Court concludes it lacks subject-matter jurisdiction over Qwest, the Court does not address Qwest's other ground for dismissal.

Because Plaintiff is proceeding *pro se* and because, as noted, it is not entirely clear whether Plaintiff asserts the arbitration clause is unconscionable, and, if so, what factual basis would support that assertion, the Court grants Plaintiff leave to file a Second Amended Complaint to the extent that Plaintiff wishes to and is able to allege a basis for a defense of unconscionability related to the arbitration clause of the

Agreement.


<u>CONCLUSION</u>

For these reasons, the Court **GRANTS** Defendants' Motion (#13) for Dismissal on the ground of lack of personal jurisdiction as to CenturyLink, **GRANTS** Defendants' Motion (#13) for Dismissal on the ground of lack of subject-matter jurisdiction as to Qwest, **GRANTS** Defendants' Motion (#33) to Strike Plaintiff's Surreplies, **STRIKES** Plaintiff's Requests (#27, #29, #31) for Judicial Notice, and **DISMISSES** CenturyLink from this action for lack of personal jurisdiction **without prejudice.**

The Court also **GRANTS** Plaintiff leave to file a Second Amended Complaint **no later than May 22, 2015,** limited to clarifying and providing a factual basis to support his possible assertion of the unconscionability of the arbitration clause in the Agreement.  If Plaintiff does not file an Amended Complaint consistent with this Opinion and Order by May 22, 2015, the Court will dismiss this matter as to Qwest without prejudice.

IT IS SO ORDERED.

DATED this 23rd day of April, 2015.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

23 - OPINION AND ORDER